UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No. ___________________

BRITTNEY KERN,

Plaintiff,

vs.

JOHNSON & JOHNSON SERVICES, INC.,

Defendant.
_________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Brittney Kern ("Plaintiff"), sues Defendant, Johnson & Johnson Services, Inc. ("J&J," the "Company," or "Defendant"), and alleges as follows:

1. Plaintiff brings this action to redress violations by Defendant of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA").

2. Plaintiff seeks all damages provided for under the ADA and FMLA, including attorneys' fees and costs.

**PARTIES, JURISDICTION, AND VENUE**

3. Plaintiff is an individual over the age of 18 and is otherwise *sui juris*.

4. During the relevant period, Plaintiff was a resident of Pasco County, Florida, which is located within the Middle District of Florida.

5. During the relevant period, Defendant conducted business in the Middle District of Florida, including through its office located in Tampa, Florida.

6. During the relevant period, Defendant acted through its owners, officers, agents, servants, and employees, all of whom acted within the scope of their employment with Defendant.

7. During the relevant period, Defendant was Plaintiff's employer for purposes of the ADA and FMLA.

8. During the relevant period, Plaintiff was an "employee" as that term is defined under the ADA and FMLA, because, among other reasons, Plaintiff performed services for, and was under the control and direction of Defendant, and was provided wages and other remuneration by Defendant.

9. During the relevant period, Plaintiff generally worked three days per week remotely from her home in Pasco County, Florida, and generally worked in person at Defendant's office in Tampa, Florida two days per week.

10. At the time Plaintiff needed leave for her own serious health condition, Plaintiff had been employed by Defendant for more than 12 months.

11. In the 12 months prior to Plaintiff needing leave for her own serious health condition, Plaintiff worked for Defendant on a full-time basis and worked in excess of 1,250 hours.

12. During the relevant period, Defendant had at least 50 employees within a 75-mile radius of the location(s) Plaintiff was assigned to, reported to, and/or received assignments from.

13. Similarly, during the relevant period, Defendant had at least 15 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

14. Jurisdiction is conferred upon this Court as claims regarding violations of the ADA and FMLA can be brought in the appropriate District Court.

15. This Court has original jurisdiction over claims arising under the ADA pursuant to 42 U.S.C. § 12117 and under the FMLA pursuant to 29 U.S.C. § 2617(a)(2).

16. This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States.

17. Venue is proper in the Middle District of Florida because:

a. Plaintiff was employed by Defendant while residing in the Middle District of Florida and would have remained employed in the Middle District of Florida but for Defendant's unlawful actions;

b. Plaintiff performed her job duties for Defendant in the Middle District of Florida, both from her home in Pasco County, Florida, and at Defendant's office in Hillsborough County, Florida;

c. The acts that give rise to the claims of Plaintiff occurred in the Middle District of Florida; and

d. During the relevant period, Defendant transacted business in the Middle District of Florida.

## PLAINTIFF HAS EXHAUSTED ADMINISTRATIVE REMEDIES

18. On September 4, 2026, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant. *See* Charge at **Exhibit A**.

19. On September 29, 2026, the EEOC issued a Notice of Right to Sue. *See* **Exhibit B**.

20. This Complaint is being filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

21. Plaintiff has exhausted and/or met all prerequisites and preconditions to filing this Complaint.

22. Claims under the FMLA do not have prerequisites or preconditions to filing a claim.

## FACTUAL ALLEGATIONS

23. On July 25, 2022, Plaintiff began working for Defendant as part of the Experienced Human Resources Leadership Development Program (the "Program").

24. Plaintiff successfully completed the Program.

25. On August 5, 2024, Plaintiff was placed with Defendant's Employee Relations Labor Relations North America team as a Manager, Employee Relations & Labor Relations.

26. Plaintiff remained employed by Defendant until August 6, 2026, when Defendant unlawfully terminated Plaintiff's employment.

27. Throughout Plaintiff's tenure at J&J, Plaintiff consistently exceeded expectations.

28. Throughout Plaintiff's tenure at J&J, Plaintiff received favorable performance evaluations.

29. Plaintiff never received a single disciplinary action, performance write-up, or performance improvement plan throughout her employment with Defendant.

30. In fact, as late as January 7, 2026, Plaintiff's then-supervisor, Steven McIntosh (HR Leader, Employee Relations & Labor Relations), gave Plaintiff a strong performance rating.

31. Plaintiff also received 100% of her target bonus.

32. Everything changed for Plaintiff shortly thereafter when Plaintiff requested a medical accommodation because of her disabilities and then took a protected medical leave of absence.

33. Prior to disclosing her medical conditions to Defendant, Plaintiff had been diagnosed by her medical provider with, among other medical conditions, major depressive disorder and generalized anxiety disorder.

34. Plaintiff also suffered from gastrointestinal ("GI") issues.

35. These conditions are serious health conditions and disabilities as defined by applicable law because, among other reasons, they are physical and mental impairments that substantially limit several major life activities, including, but not limited to, concentrating, interacting with others, thinking, working, and digestive functions.

36. Plaintiff required ongoing treatment with a medical provider because of her medical conditions.

37. Plaintiff had been afraid to disclose her medical conditions to Defendant or request a medical accommodation because she feared being retaliated against.

38. Plaintiff's fear stemmed from, among other things, the fact that other employees had been pushed out of the Company after taking a leave of absence.

39. During the week of February 9, 2026, Plaintiff contacted Clarissa Concepcion (Occupational Health Nurse) to request accommodation paperwork because of her severe anxiety, depression, and GI issues.

40. Approximately one week after Plaintiff discussed her disabilities with Ms. Concepcion, Plaintiff's new supervisor, Vickie Howard (HR Leader, Employee Relations & Labor Relations), began questioning Plaintiff's arrival times at the office.

41. This was the first time anyone at J&J had ever spoken with Plaintiff about her arrival times.

42. Notably, Ms. Howard had supervised Plaintiff before Plaintiff reported to Mr. McIntosh.

43. Plaintiff generally maintained the same schedule during the period in which Ms. Howard previously supervised her.

44. During that earlier period, Ms. Howard never once questioned Plaintiff's arrival times.

45. In response to Ms. Howard's retaliatory questioning, Plaintiff explained to Ms. Howard that she had not been feeling well.

46. Plaintiff further explained to Ms. Howard that she was working with the Company to obtain a medical accommodation because she suffered from mental health and GI issues.

47. Plaintiff also explained to Ms. Howard that her arrival time was being impacted by her disabilities.

48. Ms. Howard appeared annoyed by Plaintiff's response.

49. After some delay by Defendant, Plaintiff eventually received the accommodation paperwork from Ms. Concepcion.

50. Plaintiff promptly met with her medical provider.

51. Plaintiff's medical provider completed the required information.

52. Defendant, however, rejected Plaintiff's paperwork.

53. Defendant claimed that it could not accept paperwork completed by a licensed social worker and that the paperwork needed to be completed by a "prescriber."

54. Even though Plaintiff knew that Defendant's denial was improper, Plaintiff nonetheless found a "prescriber" to complete the paperwork.

55. Plaintiff met with Yulonda Leverett, PMHNP-BC, who specializes in psychiatry and mental health.

56. On March 16, 2026, Ms. Leverett completed Plaintiff's ADA accommodation paperwork.

57. In the paperwork, Ms. Leverett confirmed that Plaintiff was being treated for major depressive disorder and generalized anxiety disorder.

58. Ms. Leverett also confirmed that Plaintiff's symptoms were significantly heightened within the office setting.

59. Ms. Leverett further confirmed that Plaintiff's disabilities impacted several major life activities, such as concentrating, interacting with others, thinking, and working.

60. Ms. Leverett indicated that "[i]t [was] medically necessary that [Plaintiff] be allowed to work from home 5 days/week."

61. Plaintiff submitted the completed ADA accommodation paperwork to Defendant.

62. At the time Plaintiff's medical provider requested that Plaintiff be permitted to work from home five days per week as an accommodation, Plaintiff was already working from home three days per week pursuant to Company policy.

63. As such, Plaintiff's requested accommodation required Defendant to permit Plaintiff to work from home only two additional days per week.

64. After Plaintiff submitted her ADA accommodation paperwork, Plaintiff noticed a deterioration in how Ms. Howard treated her at work.

65. Ms. Howard became less friendly toward Plaintiff.

66. Ms. Howard also seemed annoyed when Plaintiff was around her or asked her questions.

67. On or about March 31, 2026, when Plaintiff saw Ms. Howard at work, Plaintiff asked Ms. Howard what was happening with her medical accommodation request.

68. Ms. Howard seemed annoyed by Plaintiff's question and claimed that she was "conflicted out" of the situation.

69. Ms. Howard further stated that her peer, Kerri Loiselle (HR Leader, Employee Relations & Labor Relations), would meet with Ms. Concepcion to discuss Plaintiff's requested accommodation.

70. This alleged "conflict" was illogical because, as Plaintiff's supervisor, Ms. Howard needed to play a part in the interactive process.

71. The alleged "conflict" was further called into question by the fact that Ms. Howard and Ms. Loiselle were friendly with each other.

72. On April 2, 2026, Plaintiff attended a meeting regarding pending projects with Ms. Howard's supervisor, Aleicia Latimer (Director, Employee Relations and Labor Relations North America), and Melody Musaus (Sr. Specialist, Employee Relations & Labor Relations).

73. During the call, Ms. Latimer snapped at Plaintiff for referring to Ms. Musaus as "she" rather than by her name.

74. Ms. Latimer also snapped at Plaintiff for allegedly not sending documents quickly enough to Ms. Musaus.

75. Plaintiff was so taken aback by Ms. Latimer's reaction that Plaintiff asked Ms. Latimer if she would be willing to stay on the line for a few minutes after the call.

76. Ms. Latimer agreed.

77. When only Plaintiff and Ms. Latimer remained on the line, Plaintiff asked Ms. Latimer why she seemed so annoyed with Plaintiff given the good relationship that they previously had.

78. Ms. Latimer claimed that they still had a positive working relationship.

79. Plaintiff then discussed her medical accommodation request with Ms. Latimer.

80. Because of how Ms. Latimer had been treating her, Plaintiff began to experience a panic attack.

81. Plaintiff advised Ms. Latimer that she needed to get off the line because the call and Ms. Latimer's demeanor were triggering Plaintiff's disabilities.

82. Later that same day, Plaintiff was scheduled for a meeting with Ms. Latimer and Ms. Howard.

83. During the meeting, Ms. Latimer and Ms. Howard raised, for the first time, an alleged concern dating back to approximately May 2025.

84. The alleged concern involved Plaintiff not feeling comfortable signing her name on a Rescission of Severance Letter.

85. This alleged issue had never been raised with Plaintiff before, including during her 2025 year-end performance conversations.

86. Ms. Howard then brought up a 2025 sexual harassment matter that she complained Plaintiff had been uncomfortable handling.

87. Plaintiff explained that she had been the victim of a sexual assault and felt discomfort with the issues involved in the matter.

88. Ms. Latimer appeared disgusted by Plaintiff's response.

89. Finally, Ms. Howard claimed that, on March 11, 2026, Plaintiff had allegedly hung up on a Patient Service Center employee.

90. Plaintiff responded that she had previously discussed the situation with Ms. Howard.

91. At the time of that prior discussion, Ms. Howard had not expressed any dissatisfaction with Plaintiff's handling of the situation.

92. Plaintiff nonetheless reiterated the circumstances of how the call ended.

93. Because Plaintiff was inappropriately attacked during this meeting, Plaintiff's disability symptoms were further triggered.

94. The next day, April 3, 2026, during a call with Plaintiff, Ms. Howard stated that the prior day's meeting did "not go towards performance."

95. During the same call, Ms. Howard also confirmed that she did not have any issues with the way Plaintiff had been handling her job duties.

96. On April 13, 2026, Ms. Concepcion called Plaintiff and informed Plaintiff that Defendant was denying the accommodation requested by Plaintiff's

medical provider because in-office collaboration was allegedly necessary.

97. Ms. Concepcion stated that Defendant was only willing to reserve a private room for Plaintiff for the two days per week that Plaintiff worked in the office.

98. Defendant's stated reason for denying Plaintiff's requested accommodation was pretextual.

99. Plaintiff had already been successfully working from home at least three days per week.

100. Furthermore, little collaboration occurred in person in the office, as most meetings were conducted virtually.

101. In addition, other employees in Plaintiff's department were permitted to work remotely five days per week.

102. Defendant's offer of a private room did not address Plaintiff's medical needs because Plaintiff's symptoms were significantly heightened within the office setting itself.

103. Plaintiff explained to Ms. Concepcion that the purpose of the requested accommodation was to address Plaintiff's mental and physical impairments.

104. Plaintiff also told Ms. Concepcion that she felt like she was being targeted and retaliated by Defendant.

105. In response, Ms. Concepcion stated that Plaintiff should consider taking

a leave of absence.

106. Plaintiff's health conditions continued to worsen after Defendant denied her requested accommodation.

107. Plaintiff's worsening symptoms included suicidal thoughts.

108. Feeling like she had no choice, Plaintiff contacted Defendant's third-party FMLA administrator, Alight, to request a medical leave of absence.

109. Alight approved Plaintiff for a leave of absence under the FMLA from May 22, 2026 through July 6, 2026.

110. During her FMLA leave, Plaintiff sought regular treatment from her medical provider.

111. During her FMLA leave, Plaintiff also took steps to try to recover from the trauma she experienced at work.

112. Plaintiff returned to work on July 7, 2026.

113. For the next few weeks after Plaintiff returned to work, Ms. Latimer and Ms. Howard essentially ignored Plaintiff.

114. On or about July 14, 2026, Ms. Howard saw Plaintiff crying at work because of the anxiety Plaintiff was experiencing.

115. On August 5, 2026, Plaintiff received a meeting invitation for what she believed was her mid-year review as she had missed her mid-year review while she was out of the office on FMLA leave.

116. On August 6, 2026, at approximately 3:30 p.m., Plaintiff joined the meeting with Ms. Howard.

117. Unexpectedly, Sebastián Ruiz Sánchez (Business Unit Human Resources – Global Services HR) joined.

118. Ms. Howard informed Plaintiff that her employment was being terminated effective immediately.

119. Ms. Howard claimed that Plaintiff was being terminated due to alleged performance issues and that Plaintiff had not met the performance expectations for her position.

120. Ms. Howard cited Plaintiff's alleged refusal to handle the 2025 sexual harassment matter.

121. Ms. Howard also claimed that Plaintiff was not neutral in her investigations.

122. Plaintiff asked if she could respond to these false claims and Ms. Howard said "no."

123. Defendant's stated reasons for terminating Plaintiff's employment were false and pretextual.

124. A few months earlier, Ms. Howard told Plaintiff that she did not have any issues with the way Plaintiff had been handling her job duties.

125. Moreover, the 2025 sexual harassment matter cited by Ms. Howard

predated the strong performance rating and 100% target bonus that Plaintiff received in January 2026.

126. Defendant terminated Plaintiff's employment approximately one month after Plaintiff returned from protected FMLA leave and shortly after denying Plaintiff's requested accommodation.

127. Following the termination meeting, Defendant revoked Plaintiff's access to Defendant's systems and sent Plaintiff a separation agreement that contained a general release of claims.

128. Plaintiff refused to sign the separation agreement.

129. It is clear that Defendant discriminated against Plaintiff because of her disabilities, failed to provide Plaintiff with a reasonable accommodation, and retaliated against Plaintiff for requesting a reasonable accommodation and for taking protected FMLA leave.

130. Defendant's actions have caused Plaintiff significant emotional distress and have negatively impacted Plaintiff's medical conditions.

131. Plaintiff has retained the undersigned legal counsel to prosecute this action on Plaintiff's behalf and has agreed to pay a reasonable fee for legal services.

## COUNT I
## VIOLATIONS OF THE FMLA AGAINST DEFENDANT – RETALIATION

132. Plaintiff re-adopts every factual allegation as stated in paragraphs 1 through 131 above as though fully recited herein.

133. At all relevant times, Plaintiff was an eligible employee under the FMLA.

134. At all relevant times, Defendant was a covered employer under the FMLA.

135. Plaintiff was entitled to FMLA leave because of Plaintiff's own qualifying serious health conditions.

136. Plaintiff engaged in protected activity under the FMLA by requesting and taking FMLA leave from May 22, 2026 through July 6, 2026 for Plaintiff's serious health conditions.

137. Defendant subjected Plaintiff to an adverse employment action by terminating Plaintiff's employment on August 6, 2026.

138. Defendant terminated Plaintiff's employment approximately one month after Plaintiff returned from protected FMLA leave.

139. But for Plaintiff's protected activity, Plaintiff would not have been terminated.

140. There was a causal connection between Plaintiff's protected activity and Defendant's decision to terminate Plaintiff's employment, as evidenced by the close temporal proximity between Plaintiff's return from FMLA leave on July 7, 2026 and her termination on August 6, 2026.

141. The causal connection and pretext are further evidenced by the fact that

Plaintiff had never received a single disciplinary action prior to taking FMLA leave.

142. The causal connection and pretext are further evidenced by the fact that, on April 3, 2026, Ms. Howard told Plaintiff that she did not have any issues with the way Plaintiff had been handling her job duties.

143. Defendant's conduct constituted unlawful retaliation against Plaintiff in violation of the FMLA.

144. Defendant's actions constituted a willful violation of the FMLA. Therefore, Plaintiff is entitled to liquidated damages.

145. As a result of Defendant's intentional, willful, and unlawful acts and omissions, Plaintiff has suffered and continues to suffer substantial losses, including past and future lost wages and benefits. Plaintiff is also entitled to liquidated damages, attorneys' fees and costs, and other damages recoverable by law.

**WHEREFORE,** Plaintiff respectfully prays that this Court award Plaintiff the following relief against Defendant:

A. Enter judgment in favor of Plaintiff;

B. Award Plaintiff her past and future loss of wages and benefits, plus interest;

C. Award Plaintiff liquidated damages equal to the sum of the amount of damages and interest;

D. Provide reinstatement to a position comparable to her former position,

or in lieu of reinstatement, award front pay including benefits;

E. Award Plaintiff her reasonable attorneys' fees and costs; and

F. Award such other and further relief as this Court deems just and proper.

## COUNT II
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA AGAINST DEFENDANT

146. Plaintiff re-adopts every factual allegation as stated in paragraphs 1 through 131 above as though fully recited herein.

147. Plaintiff was disabled as Plaintiff suffers from physical and mental impairments (including major depressive disorder, generalized anxiety disorder, and GI issues) that substantially limit several major life activities (for example, concentrating, interacting with others, thinking, working, and digestive functions), and has a record of such impairments, and therefore was a member of a protected class under the ADA.

148. At all relevant times, Plaintiff was a qualified individual with a disability who could perform the essential functions of Plaintiff's position, with or without reasonable accommodation.

149. Plaintiff's ability to perform the essential functions of her position from home is demonstrated by the fact that Plaintiff had already been successfully performing her job duties from home at least three days per week.

150. Defendant's management and leadership, including Plaintiff's

supervisors, were aware of Plaintiff's disabilities.

151. Plaintiff requested a reasonable accommodation for her disabilities, specifically, that she be permitted to work from home five days per week.

152. Plaintiff's request for a reasonable accommodation was supported by documentation from her medical provider confirming that the accommodation was medically necessary.

153. Plaintiff's requested accommodation was reasonable, as Defendant permitted other employees in Plaintiff's department to work remotely five days per week.

154. Plaintiff's requested accommodation would not have imposed an undue hardship on Defendant.

155. On April 13, 2026, Defendant denied Plaintiff's requested accommodation.

156. The only alternative offered by Defendant, a private room in the office two days per week, was not an effective accommodation because it did not address Plaintiff's medically documented need to work outside of the office setting.

157. Defendant's failure to provide Plaintiff with a reasonable accommodation adversely affected the terms, conditions, and privileges of Plaintiff's employment, including by causing Plaintiff's health conditions to worsen and forcing Plaintiff to take a leave of absence.

158. Defendant's failure to provide Plaintiff with a reasonable accommodation constitutes discrimination against Plaintiff in violation of the ADA.

159. Defendant's conduct was willful and in disregard of Plaintiff's protected rights.

160. Defendant was aware that its failure to accommodate Plaintiff's disabilities was unlawful but acted in reckless disregard of the law.

161. As a result of Defendant's actions as alleged herein, Plaintiff has been deprived of rights and has suffered extreme emotional distress.

162. The actions of Defendant and/or its agents, employees, and/or representatives were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages such as economic, compensatory, and punitive damages.

163. Plaintiff has suffered and will continue to suffer compensable damages because of Defendant's failure to accommodate Plaintiff's disabilities.

**WHEREFORE,** Plaintiff respectfully prays that this Court award Plaintiff the following relief against Defendant:

A. Adjudge and decree that Defendant violated the ADA, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B. Award Plaintiff back pay;

C. Require Defendant to reinstate Plaintiff to the same position at the same

rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been discriminated against by Defendant or in lieu of reinstatement, award front pay;

D. Award Plaintiff compensatory damages;

E. Award Plaintiff punitive damages;

F. Award Plaintiff attorneys' fees and costs;

G. Award Plaintiff all recoverable interest; and

H. Grant Plaintiff such additional relief as this Court deems just and proper under the circumstances.

**COUNT III**
**DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA AGAINST DEFENDANT**

164. Plaintiff re-adopts every factual allegation as stated in paragraphs 1 through 131 above as though fully recited herein.

165. Plaintiff was disabled as Plaintiff suffers from physical and mental impairments (including major depressive disorder, generalized anxiety disorder, and GI issues) that substantially limit several major life activities (for example, concentrating, interacting with others, thinking, working, and digestive functions), has a record of such impairments, or was perceived as disabled, and therefore was a member of a protected class under the ADA.

166. At all relevant times, Plaintiff was a qualified individual with a disability who could perform the essential functions of Plaintiff's position, with or

without reasonable accommodation.

167. Defendant intentionally discriminated against Plaintiff because of Plaintiff's disabilities as set forth herein, including by terminating Plaintiff's employment.

168. Even if Defendant claims Plaintiff was not disabled, Plaintiff's impairments were perceived disabilities.

169. Defendant's management and leadership, including Plaintiff's supervisors, were aware of Plaintiff's disabilities.

170. Plaintiff's disabilities are neither transitory nor minor and substantially limit several major life activities.

171. Defendant's stated reasons for terminating Plaintiff's employment were a pretext for disability discrimination.

172. Instead of complying with its legal obligations, Defendant engaged in a series of discriminatory and improper acts, including terminating Plaintiff's employment.

173. Defendant's conduct was willful and in disregard of Plaintiff's protected rights.

174. Defendant was aware that discrimination based on Plaintiff's disabilities was unlawful but acted in reckless disregard of the law.

175. As a result of Defendant's actions as alleged herein, Plaintiff has been

deprived of rights, has been exposed to ridicule and embarrassment, and has suffered extreme emotional distress and damage to Plaintiff's professional reputation.

176. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and Defendant's failure to take prompt remedial action, deprived Plaintiff of statutory rights under the law.

177. The actions of Defendant and/or its agents, employees, and/or representatives were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages such as economic, compensatory, and punitive damages.

178. Plaintiff has suffered and will continue to suffer compensable damages because of Defendant's discriminatory actions.

**WHEREFORE,** Plaintiff respectfully prays that this Court award Plaintiff the following relief against Defendant:

A. Adjudge and decree that Defendant violated the ADA, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B. Award Plaintiff back pay;

C. Require Defendant to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been discriminated against by Defendant or in lieu of reinstatement, award front pay;

D. Award Plaintiff compensatory damages;

E. Award Plaintiff punitive damages;

F. Award Plaintiff attorneys' fees and costs;

G. Award Plaintiff all recoverable interest; and

H. Grant Plaintiff such additional relief as this Court deems just and proper under the circumstances.

## COUNT IV
## RETALIATION IN VIOLATION OF THE ADA AGAINST DEFENDANT

179. Plaintiff re-adopts every factual allegation as stated in paragraphs 1 through 131 above as though fully recited herein.

180. Plaintiff engaged in statutorily protected activity under the ADA by requesting a reasonable accommodation for her disabilities and by submitting medical documentation in support of her request.

181. Plaintiff further engaged in statutorily protected activity under the ADA by objecting to Defendant's denial of her requested accommodation and by complaining about retaliation by Defendant.

182. Defendant was aware of Plaintiff's protected activity.

183. Defendant subjected Plaintiff to materially adverse actions that would dissuade a reasonable employee from making or supporting a charge of discrimination, including subjecting Plaintiff to heightened scrutiny of her arrival times, identifying previously unraised performance concerns, and ultimately terminating Plaintiff's employment.

184. Approximately one week after Plaintiff first requested an accommodation, Ms. Howard began questioning Plaintiff's arrival times for the first time.

185. Less than three weeks after Ms. Leverett completed Plaintiff's ADA accommodation paperwork, Ms. Howard and Ms. Latimer raised alleged performance concerns that dated back nearly a year and had never been raised with Plaintiff before.

186. But for Plaintiff's protected activity, Plaintiff would not have been subjected to these adverse actions.

187. There was a causal connection between Plaintiff's protected activity and Defendant's adverse actions, as evidenced by the close temporal proximity between Plaintiff's protected activity and the commencement of Defendant's heightened scrutiny, its sudden criticism of Plaintiff's performance, and Plaintiff's subsequent termination.

188. Defendant's stated reasons for its adverse actions, including the termination of Plaintiff's employment, were a pretext for retaliation.

189. Defendant's conduct constituted unlawful retaliation against Plaintiff in violation of the ADA.

190. Defendant's conduct was willful and in disregard of Plaintiff's protected rights.

191. As a result of Defendant's actions as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered extreme emotional distress and damage to Plaintiff's professional reputation.

192. The actions of Defendant and/or its agents, employees, and/or representatives were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages such as economic, compensatory, and punitive damages.

193. Plaintiff has suffered and will continue to suffer compensable damages because of Defendant's retaliatory actions.

**WHEREFORE,** Plaintiff respectfully prays that this Court award Plaintiff the following relief against Defendant:

A. Adjudge and decree that Defendant violated the ADA, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B. Award Plaintiff back pay;

C. Require Defendant to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been retaliated against by Defendant or in lieu of reinstatement, award front pay;

D. Award Plaintiff compensatory damages;

E. Award Plaintiff punitive damages;

F. Award Plaintiff attorneys' fees and costs;

G. Award Plaintiff all recoverable interest; and

H. Grant Plaintiff such additional relief as this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable of right by a jury.

Dated: October 23, 2026

Respectfully submitted,

**BT LAW GROUP, PLLC**
3050 Biscayne Blvd., Suite 205
Miami, Florida 33137
Tel: (305) 507-8506

By: s/ Jason D. Berkowitz
**ANISLEY TARRAGONA, ESQ.**
Florida Bar No. 51626
anisley@btattorneys.com
**JASON D. BERKOWITZ, ESQ.**
Florida Bar No. 0055414
jason@btattorneys.com

Attorneys for Plaintiff